The Honorable Preston Scroggin State Representative 59 Marshall Road South Vilonia, AR 72173-9335
Dear Representative Scroggin:
You have requested an Attorney General opinion concerning the disclosure of customer information by a community water association. The following opinion is a response to your request.
Your specific questions are:
 (1) What personal information, such as a name, address, social security number, telephone number or driver's license number, about customers is a community water association required to give from their data banks upon request from another business, association or individual?
 (2) If the association must give information, may they charge for this service?
RESPONSE
Question 1 — What personal information, such as a name, address, socialsecurity number, telephone number or driver's license number, aboutcustomers is a community water association required to give from theirdata banks upon request from another business, association orindividual?
It is my opinion that the answer to this question will depend largely upon the nature of the water association in question. If the association is an organization that is subject to the Freedom of Information Act, records reflecting some of this information must be provided, as discussed more fully below. If the association is not subject to the Act, it is not required by any law to provide this type of information.
The Arkansas Freedom of Information Act clearly applies to governmental entities. However, it can also apply to private entities. The Arkansas Supreme Court has held that the requirements of the Freedom of Information Act apply to private non-profit entities that receive public funds and that perform functions normally performed by the government. For example, in Rehab Hosp. Serv. v. Delta-Hills Health Sys. Inc.,285 Ark. 397, 687 S.W.2d 840 (1985), the court applied the Freedom of Information Act to an organization that was incorporated as a non-profit regional health planning corporation, because the organization was funded primarily by federal funds and served a public function. Accord, Ark.Gazette Co. v. Southern State College, 273 Ark. 248, 620 S.W.2d 258
(1981); N. Cent. Ass'n of Colleges v. Troutt Brothers, 261 Ark. 378,548 S.W.2d 825 (1977).
With regard to water associations specifically, this office has previously opined that if the facts show that the water association has received and is continuing to utilize public funds, and that it serves a function normally served by government, the Freedom of Information Act should apply to that water association. See Op. Att'y Gen. No. 99-090.Accord, Ops. Att'y Gen. Nos. 94-001; 92-205. (The cited opinions were issued by my predecessors in office. I concur with their conclusions.) These issues (of public funding and function) are ultimately questions of fact. I note that each of the above-cited opinions has cited to a Washington County Circuit Court decision, Sitton v. Gayer, Myers, Gregg,Harp and the White River Rural Water Association (No. CIV 92-411, Washington County Circuit Court, June 1, 1992). The circuit judge in that case specifically held that the White River Rural Water Association, which received a $100,000 grant in 1975, was in receipt of and was expending direct public funds for the operation of its business. The court also found that by providing water to its nineteen hundred members, the association was performing a function normally provided by governmental entities. The court held the Association was therefore subject to the provisions of the FOIA.
The Washington County decision, of course, having not been appealed, does not stand as statewide precedent. In addition, the facts regarding the community water association about which you have inquired may be distinct from those presented to the Washington County Circuit Court. Nevertheless, this decision does indicate the possibility that a water association can be found factually to be subject to the Freedom of Information Act, upon the basis of its particular receipt and use of public funds and upon the basis of its particular functions. See alsoWaterworks v. Kristen Invest. Prop., 72 Ark. App. 37, 32 S.W.3d 60 (2000) (Private, non-profit volunteer fire department that provided water service to area residents required to pay attorneys' fees for refusal to comply with the FOIA).
I therefore conclude that if, as a factual matter, the water association about which you have inquired utilizes public funds, and if it serves a public function by providing water to its members, it is subject to the Freedom of Information Act.
If this conclusion is supported by the facts (i.e., if the water association is subject to the Act), it must provide access to its records[1] that are not exempt from disclosure.
Some of the information about which you have inquired is exempt from disclosure. This office has consistently opined, relying on federal law (5 U.S.C. § 552a, the "Federal Privacy Act"), that social security numbers should not be disclosed. See, e.g., Op. Att'y Gen. No. 2001-028
and opinions cited therein. Similarly, this office has relied upon federal law (the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 etseq.) to conclude that driver's license numbers should not be disclosed.See, e.g., Op. Att'y Gen. No. 99-016.
The other items of information about which you have inquired (names, addresses, and telephone numbers), are generally not exempt from disclosure. (This conclusion does not apply to unlisted telephone numbers or unlisted addresses. See, e.g., Ops. Att'y Gen. Nos. 2001-145; 99-054.) This type of information is considered public, and if the association possesses records that reflect this information, they should be released.
The only conceivable basis for arguing that this type of information should not be disclosed would be the constitutional right of privacy (and I do not believe that this argument would succeed in protecting this type of information). Nevertheless, I will outline its parameters, because a determination of whether this constitutional right applies is largely a factual one.
The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the Freedom Of Information Act, at least with regard to the release of documents containing constitutionally protectable information. SeeMcCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed.
If it can be determined factually that any of the requested information meets the three prongs of test laid out by the McCambridge court, a determination must then be made as to whether the governmental interest in disclosure under the Act (i.e., the public's legitimate interest in the matter) outweighs any privacy interest in its non-disclosure. Again, this determination will be a factual one, based upon the information available to the custodian. In this regard it should be noted that I have previously opined that the names and payment histories of the customers of a city-owned utility company are not protected by the constitutional right of privacy and must be disclosed under the Freedom of Information Act. See Op. Att'y Gen. No. 2000-129. Accord, Op. Att'y Gen. No. 97-244.
Question 2 — If the association must give information, may they chargefor this service?
The Freedom of Information Act expressly provides that entities that are subject to the Act can charge for copies of records provided in response to a citizen request.
Several provisions address the issue of copy charges.
First, A.C.A. § 25-29-105(d) states:
 (d)(1) Reasonable access to public records and reasonable comforts and facilities for the full exercise of the right to inspect and copy those records shall not be denied to any citizen.
 (2)(A) Upon request and payment of a fee as provided in subdivision (d)(3), the custodian shall furnish copies of public records if the custodian has the necessary duplicating equipment.
 (B) A citizen may request a copy of a public record in any medium in which the record is readily available or in any format to which it is readily convertible with the custodian's existing software.
 (C) A custodian is not required to compile information or create a record in response to a request made under this section.
 (3)(A)(i) Except as provided in subdivision (d)(3)(B) or by law, any fee for copies shall not exceed the actual costs of reproduction, including the costs of the medium of reproduction, supplies, equipment, and maintenance, but not including existing agency personnel time associated with searching for, retrieving, reviewing, or copying the records.
 (ii) The custodian may also charge the actual costs of mailing or transmitting the record by facsimile or other electronic means.
 (iii) If the estimated fee exceeds twenty-five dollars ($25.00), the custodian may require the requestor to pay that fee in advance.
 (iv) Copies may be furnished without charge or at a reduced charge if the custodian determines that the records have been requested primarily for noncommercial purposes and that waiver or reduction of the fee is in the public interest.
 (B) The custodian shall provide an itemized breakdown of charges under paragraphs (A) and (B).
A.C.A. § 25-19-105(d).
The association should also be mindful of situations in which it must redact exempt information from records that it will be disclosing. The provisions of A.C.A. § 25-19-105(f) are pertinent to this situation. That section states in pertinent part:
 (f)(1) No request to inspect, copy, or obtain copies of public records shall be denied on the ground that information exempt from disclosure is commingled with nonexempt information.
 (2) Any reasonably segregable portion of a record shall be provided after deletion of the exempt information.
 (3) The amount of information deleted shall be indicated on the released portion of the record and, if technically feasible, at the place in the record where the deletion was made.
 (4) If it is necessary to separate exempt from nonexempt information in order to permit a citizen to inspect, copy, or obtain copies of public records, the custodian shall bear the cost of the separation.
A.C.A. § 25-19-105(f).
Finally, the provisions of A.C.A. § 25-19-109 are also pertinent to the issue of copy charges:
 (a)(1) A custodian, at his or her discretion, may agree to summarize, compile, or tailor electronic data in a particular manner or medium and may agree to provide the data in an electronic format to which it is not readily convertible.
 (2) Where the cost and time involved in complying with the requests are relatively minimal, custodians should agree to provide the data as requested.
 (b)(i) If the custodian agrees to a request, the custodian may charge the actual, verifiable costs of personnel time exceeding two (2) hours associated with the tasks, in addition to copying costs authorized by § 25-19-105(d)(3).
 (ii) The charge for personnel time shall not exceed the salary of the lowest paid employee or contractor who, in the discretion of the custodian, has the necessary skill and training to respond to the request.
 (c) The custodian shall provide an itemized breakdown of charges under subsection (b).
A.C.A. § 25-19-109.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] It should be noted that the Freedom of Information Act does not require entities to produce "information." Rather, it requires them to provide access to public records. Moreover, the Act specifically provides that entities need not create records that do not already exist in order to respond to a request. A.C.A. § 25-19-105(d)(2)(C). However, if the entity possesses records that contain the requested information, it should provide those records (if they are not exempt from disclosure). It should also be noted that the Act only requires that access to records be provided to Arkansas citizens. A.C.A. § 25-19-105(a)(1).